1  Jason S. Hartley (SBN# 192514)
   **HARTLEY LLP**
2  101 West Broadway, Suite 820
   San Diego, CA 92101
3  Telephone: 619-400-5822
   hartley@hartleyllp.com
4
5  George A. Hanson
   J. Austin Moore
6  Alexander T. Ricke
   **STUEVE SIEGEL HANSON LLP**
7  460 Nichols Road, Suite 200
   Kansas City, Missouri 64112
8  Telephone: (816) 714-7100
   Facsimile: (816) 714-7101
9  hanson@stuevesiegel.com
   moore@stuevesiegel.com
10 ricke@stuevesiegel.com
11
12           **IN THE UNITED STATES DISTRICT COURT**
             **FOR THE NORTHERN DISTRICT OF CALIFORNIA**
13
                        **OAKLAND DIVISION**
14

| | |
|---|---|
| 15  CRYSTAL GARDNER and ASHLEY SMITH, individually and on behalf of all others similarly situated, | Case No. |
| 16 | **CLASS ACTION COMPLAINT FOR**: |
| 17 | 1.  Failure to Pay Wages for Mandatory Pre-Assignment Training (Cal. Lab. Code §§ 1194, 1197) |
| 18           Plaintiffs, | |
| 19        v. | 2.  Failure to Reimburse Business Expenses (Cal. Lab. Code § 2802) |
| 20  AMN HEALTHCARE SERVICES, INC., AMN SERVICES, LLC, KAISER FOUNDATION HEALTH PLAN, INC., and KAISER FOUNDATION HOSPITALS. | 3.  Meal and Rest Period Violations (Cal. Lab. Code §§ 226.7, 512) |
| 21 | |
| 22 | 4.  Failure to Include All Compensation in Regular Rate of Pay (Cal. Lab. Code §§ 510, 226.7, 1194) |
| 23           Defendants. | |
| 24 | 5.  Failure to Timely Pay Wages Upon Separation (Cal. Lab. Code §§ 201–203) |
| 25 | |
| 26 | 6.  Failure to Timely Pay Wages During Employment (Cal. Lab. Code § 204) |
| 27 | |

28

7. Violation of California's Unfair
   Competition Law (Bus. & Prof. Code
   §§ 17200 *et seq.*)

8. Failure to Pay Overtime Wages Under
   the Fair Labor Standards Act (29
   U.S.C. § 207)

**JURY TRIAL DEMANDED**

Plaintiffs Crystal Gardner and Ashley Smith, on behalf of themselves and all similarly situated individuals, bring this class and collective action against AMN Healthcare Services, Inc. and AMN Services, LLC (together, "AMN"),  as well as Kaiser Foundation Health Plan, Inc. and Kaiser Foundation Hospitals (together, "Kaiser") (collectively, "Defendants") for violations of the California Labor Code and the Fair Labor Standards Act ("FLSA"). Plaintiffs make the following allegations based upon personal knowledge as to their own actions and upon information and belief as to all other matters.

## NATURE OF THE ACTION

1. AMN, one of the nation's largest healthcare staffing companies, has built its business model on the labor of travel nurses and allied health professionals who accept short-term assignments—often far from home—requiring them to uproot their lives, incur substantial out-of-pocket expenses, and work long, demanding shifts. These professionals have become an indispensable part of the healthcare system, particularly during times of crisis such as the COVID-19 pandemic. Kaiser, a major California-based healthcare provider, regularly utilizes AMN's staffing services, contracting with AMN to supply healthcare professionals for its facilities, and shares responsibility for ensuring compliance with wage and hour laws.

2. Rather than compensate these workers in compliance with the law, AMN has adopted practices that result in systematic underpayment of wages owed. These practices include: (1) failing to pay for mandatory pre-employment

onboarding and training, even though this work is required before an employee may begin their assignment; (2) requiring employees to bear essential business expenses—including travel, licensing, credentialing, testing, and uniforms—in violation of California Labor Code § 2802; (3) denying or underpaying premiums for missed or noncompliant meal and rest periods, despite routinely subjecting workers to schedules and staffing conditions that prevent lawful breaks; (4) systematically miscalculating the "regular rate of pay" by excluding per diems, stipends, and other forms of non-discretionary compensation, resulting in the underpayment of overtime wages and meal and rest break premiums; and (5) failing to timely pay wages owed both during employment and upon separation, and failing to furnish accurate wage statements.

3.    These violations are not isolated incidents, but rather systemic features of AMN's business operations. Plaintiffs and similarly situated workers are owed compensation for all hours worked, reimbursement for necessary expenses, and full payment of all premiums and overtime wages at lawful rates. Through this action, Plaintiffs seek to hold AMN, and Kaiser as a joint employer, accountable for these widespread violations and recover the wages owed to these essential workers.

**PARTIES**

4.    Plaintiff Crystal Gardner is a citizen of Texas who accepted travel assignments from AMN to relocate and work at facilities located in California and Texas.

5.    Plaintiff Ashley Smith is a citizen of Indiana who accepted travel assignments from AMN to relocate and work at facilities located in California and Ohio.

6.    AMN Healthcare Services, Inc. is a Delaware corporation publicly traded on the New York Stock Exchange, maintaining dual headquarters or principal places of business located at 12400 High Bluff Drive, Suite 100, San Diego,

California 92130, and 8840 Cypress Waters Boulevard, Suite 300, Dallas, Texas 75019.

7.      Defendant AMN Services, LLC is a limited liability company formed under state law that maintains its headquarters in San Diego, California.

8.      Kaiser Foundation Health Plan, Inc. and Kaiser Foundation Hospitals are non-profit corporations incorporated in California with a principal place of business located at One Kaiser Plaza, Oakland, California, 94612.

9.      Defendants AMN and Kaiser can be served through their registered agent, CSC – Lawyers Incorporating Service, at 2710 Gateway Oaks Drive, Sacramento, California, 95833.

## JURISDICTION

10.     This Court has subject matter jurisdiction over this lawsuit under the Class Action Fairness Act, 28 U.S.C. § 1332(d), because this is a proposed class action in which: (1) there are at least 100 class members; (2) the combined claims of class members exceed $5,000,000.00, exclusive of interest, attorneys' fees, and costs; and (3) Defendants and at least one class member are citizens of different states.

11.     This Court has personal jurisdiction over Defendants because they are authorized to do business and regularly conduct business in California, and many of Plaintiffs' claims arose within the state of California.

## VENUE AND DIVISIONAL ASSIGNMENT

12.     Venue is proper in this District under 28 U.S.C. § 1391(b) because Plaintiffs worked in this District and experienced wage violations in this District, and thus a substantial part of the conduct at issue in this case occurred in this District.

13.     Assignment to the Oakland Division is proper under Civil LR 3-2(c) and (e) because Kaiser is located in Oakland, California, in Alameda County, and a

3

substantial part of the events or omissions giving rise to the claim occurred within this county.

## **STATEMENT OF FACTS**

**A. AMN fails to pay for mandatory pre-employment onboarding and training time.**

14.    Under California law, employers like Defendants must generally pay their employees for time spent on work-related training materials, particularly if that training is a mandatory part of the job.

15.    Here, Defendants required all traveling nurses who were assigned to work at a facility, including Plaintiffs and Class Members, to perform mandatory pre-assignment training, including completing an orientation curriculum, training modules, and passing required exams before they were permitted to begin their regular work assignments.

16.    Despite the mandatory nature of the training and its direct relation to job duties, AMN failed to pay Plaintiffs and Class Members for the time spent completing it.

17.    For example, on or about October 9, 2024, Plaintiff Smith accepted employment with AMN to work a short-term assignment at El Camino Hospital from November 11, 2024 to February 8, 2025.

18.    Upon accepting her assignment at the facility, Plaintiff Smith was instructed by AMN, in coordination with the facility, to complete a required orientation curriculum and training modules prior to the start of her assignment.

19.    Although it took Plaintiff Smith at least 12 hours to complete these required pre-assignment modules, she was not compensated for this mandatory work.

20.     Similarly, on September 29, 2023, Plaintiff Gardner accepted employment with AMN to work a short-term assignment at Kaiser Vallejo in Vallejo, California from November 7, 2023, to February 3, 2024.

21.     Upon accepting her assignment at the facility, Plaintiff Gardner was instructed by AMN, in coordination with Kaiser, to complete the required orientation curriculum and training modules prior to the start of her assignment.

22.     Plaintiff Gardner submitted timesheets indicating she spent 16.5 hours completing the required training modules. Instead of being paid her contracted hourly rate of $60.75, she was only compensated $15 per hour.

23.     Training time such as that spent by Plaintiffs completing mandatory pre-assignment training materials, is compensable work time under California law unless all the following criteria are met: (1) attendance is outside of the employee's regular working hours; (2) attendance is in fact voluntary; (3) the course, lecture, or meeting is not directly related to the employee's job; and (4) the employee does not perform any productive work during such attendance. DLSE Enforcement Policies and Interpretations Manual § 46.6.3.

24.     Under California law, "attendance is not voluntary if the employee is led to believe that present working conditions or the continuation of employment would be adversely affected by nonattendance." *Id.*

25.     Moreover, "training is directly related to an employee's job if it is designed to make the employee handle his job more effectively as distinguished from training him for another job or to a new or additional skill." *Id.*

26.     Time spent by Plaintiffs and Class Members completing Defendants' mandatory pre-assignment training is compensable working time because attendance is not voluntary and the training program provides training that is directly related to the travel nurse employee's job.

27.    Time spent completing mandatory pre-assignment training materials was not voluntary because Plaintiffs and Class Members were expressly required to complete the modules before they could begin their regular work assignments. Defendants neither recorded this time nor provided a mechanism for employees to claim it, thereby further violating California's wage statement and recordkeeping requirements under Labor Code §§ 226 and 1174.

**B. AMN fails to reimburse business expenses.**

28.    As part of their assignments, travel nurses were routinely required to incur substantial out-of-pocket business expenses, including but not limited to, transportation to the assignment location, lodging costs, mileage, and incidentals related to their temporary relocation and employment duties.

29.    For example, on approximately October 9, 2024, Plaintiff Smith accepted employment with AMN to work a short-term assignment at El Camino Hospital in Mountain View, California.

30.    In preparation for the assignment, Plaintiff Smith incurred business expenses that were necessary to perform her job duties, including airfare from Indiana to California, rideshare services, car rental costs necessary for local transportation during her assignment, or other travel-related costs. These expenses were necessary to perform her employment duties with AMN.

31.    Similarly, Plaintiff Gardner incurred substantial business-related expenses in connection with her short-term employment assignment at Kaiser Vallejo. Specifically, in November 2023, Plaintiff Gardner spent over $600 on airfare necessary for travel to this assignment but received reimbursement from AMN of only $250. Additionally, Plaintiff Gardner incurred business expenses during several other assignments with AMN that were either entirely unreimbursed or reimbursed in amounts substantially less than her actual costs.

32.    Pursuant to California Labor Code § 2802, "[a]n employer shall indemnify his or her employee for all necessary expenditures or losses incurred by the employee in direct consequence of the discharge of his or her duties." Although AMN was aware Plaintiff Smith would incur such expenses, it failed to reimburse them.

33.    AMN maintained a uniform policy and practice of failing to reimburse travel nurses for reasonable and necessary expenses incurred in connection with their assignments.

34.    AMN's failure to indemnify Plaintiffs and others similarly situated for mandatory and foreseeable expenses constitutes a violation of California Labor Code § 2802.

35.    As a direct result of AMN's failure to reimburse, Plaintiffs and similarly situated clinicians have suffered financial harm in the form of uncompensated business expenditures that they were legally entitled to recover from AMN.

### C. AMN denied or underpaid premiums for missed or noncompliant meal and rest periods.

36.    Throughout their assignments, Plaintiffs and Class Members were routinely subjected to working conditions that made it difficult or impossible to take meal and rest breaks. Plaintiffs regularly worked shifts in units that were severely understaffed, without adequate support to enable uninterrupted breaks.

37.    California Labor Code § 512 entitles non-exempt employees to a 30-minute off-duty meal break when working more than five hours, and a second 30-minute meal period when working more than 10 hours. IWC wage order No. 4-2001 entitles non-exempt employees to a paid 10-minute rest break for every four hours worked or major fraction thereof. These rest breaks are to be counted as hours worked for which there shall be no deduction from wages.

38.     When an employer fails to provide such breaks, California Labor Code § 226.7 requires it to pay the employee one additional hour of pay at their regular rate for each day a violation occurs.

39.     AMN failed to ensure compliance with these requirements and did not implement policies or staffing arrangements that allowed travel nurses to regularly take uninterrupted, off-duty breaks. Instead, AMN placed Plaintiffs in high-acuity units where coverage was unavailable and patient care responsibilities made it difficult or impracticable to leave the unit.

40.     While AMN assigned Plaintiffs to specific healthcare facilities and set the terms of their employment—including shift length, assignment duration, and compensation—it failed to ensure that the working conditions at those facilities allowed for compliance with state meal and rest break laws. Despite knowing that travel nurses would be deployed into environments with chronic understaffing, AMN made no meaningful efforts to coordinate with facility clients to ensure that adequate break coverage would be provided. As a result, Plaintiffs were frequently unable to take uninterrupted, compliant meal and rest breaks.

41.     AMN further failed to ensure accurate tracking of meal and rest breaks. In coordination with the healthcare facilities where Plaintiffs were assigned, AMN relied on automatic timekeeping deductions that presumptively recorded meal breaks as taken, regardless of whether a break actually occurred. AMN made no meaningful effort to verify whether breaks were actually provided or to identify and compensate employees for missed, shortened, or interrupted breaks, resulting in systematic underpayment of premium wages owed under California law.

42.     For example, from approximately October 2022 through February 2024, Plaintiff Gardner was employed by AMN at multiple Kaiser facilities. During these assignments, Plaintiff Gardner was frequently required to remain on duty during scheduled meal and rest breaks due to chronic understaffing and the lack of

available relief nurses. Additionally, despite regularly working shifts exceeding ten hours, Plaintiff Gardner was routinely denied a second meal period. AMN failed to provide compensation, including meal or rest period premiums, for these missed or non-compliant breaks.

43.    AMN's failure to provide compliant meal and rest periods, and its failure to compensate employees for resulting violations, constitutes a systematic violation of California Labor Code §§ 226.7 and 512. Plaintiffs and other similarly situated employees were deprived of legally required wages as a direct result.

**D. AMN's underpaid overtime wages and meal and rest period premiums.**

44.    Under both California and federal law, an employee's "regular rate of pay" must include all non-discretionary forms of compensation when calculating overtime wages and premium payments for missed or noncompliant meal and rest periods.

45.    Under California law, when calculating overtime wages or premium payments for missed meal and rest breaks under Labor Code §§ 510 and 226.7, employers must include all forms of non-discretionary compensation, including hourly wages, shift differentials, performance-based bonuses, and fixed stipends or per diems provided as part of the employee's agreed-upon pay.

46.    Similarly, the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 207(e), requires that an employee's regular rate for purposes of overtime pay must include "all remuneration for employment paid to, or on behalf of, the employee," unless specifically excluded. Courts have held that recurring stipends, allowances, and per diem payments tied to job performance or time worked are non-excludable under the FLSA.

9

47. AMN utilizes form employment agreements entitled Professional Services Agreements ("PSAs" or "Agreements") for its traveling nurse employees that include the following material terms:

(1) the start and end date for the assignment,

(2) the facility name and address,

(3) the position, shift, and minimum required hours and shifts, and

(4) the traveler's compensation, set forth as:

> (a) an hourly pay rate;
>
> (b) an on-call pay rate;
>
> (c) a call back rate;
>
> (d) a holiday rate; and
>
> (e) the traveler's daily meals, incidentals, and housing stipends.

48. These contractually guaranteed stipends and other forms of compensation are paid irrespective of actual expenses incurred and represent non-discretionary compensation. They are fixed and not subject to variation based on actual expenses incurred. Rather, they are integral parts of the compensation offered for accepting and completing a travel assignment.

49. Despite this, AMN systematically excluded these stipend amounts from its calculation of the "regular rate of pay" used to compute overtime compensation and premium pay for missed or noncompliant breaks. As a result, Plaintiffs and other similarly situated workers were paid less than what was lawfully owed under both state and federal law.

50. For example, Plaintiff Smith worked more than 40 hours per week during multiple assignments and worked more than eight hours per day while assigned in California. As part of her contracted compensation, Plaintiff Smith received fixed payments labeled as "stipends" that were non-discretionary and consistently provided regardless of actual expenses incurred. AMN improperly

excluded these stipend amounts from her regular rate of pay when calculating overtime and meal or rest break premium payments, resulting in significant underpayment.

51.    Similarly, Plaintiff Gardner regularly worked more than 40 hours per week and in excess of eight hours per day while assigned to Community Regional Medical Center and various Kaiser facilities in California. Plaintiff Gardner also received fixed stipends pursuant to her PSA that AMN improperly excluded from her regular rate of pay.

52.    Despite the non-discretionary nature of these payments, AMN failed to include them when calculating the regular rate of pay used to determine both overtime wages and meal and rest break period premiums. Instead, AMN calculated such payments solely based on employees' base hourly rate, systematically excluding assignment-based stipends and thereby undercalculating the actual regular rate.

53.    As a result, Plaintiffs received less compensation than required by both California law and the FLSA.

54.    AMN's exclusion of non-discretionary compensation from regular rate calculations violated California Labor Code §§ 510, 226.7, and 1194, as well as the FLSA, 29 U.S.C. § 207. This underpayment of overtime and premium wages also resulted in inaccurate wage statements, in violation of Labor Code § 226.

**E. AMN failed to timely pay wages during employment and upon separation.**

55.    Under California law, employers are required to pay employees all earned wages in a timely manner during the course of employment and upon separation. Specifically, Labor Code § 204 mandates that employers pay wages for labor performed no later than designated regular paydays. Labor Code §§ 201 and

202 require that all final wages be paid immediately upon termination or within 72 hours of voluntary resignation, respectively.

56.     When an employer willfully fails to pay all wages owed at the time of separation, Labor Code § 203 provides that the employee's wages shall continue as a penalty for up to 30 days until paid in full.

57.     AMN failed to comply with these requirements in multiple respects. First, AMN systematically underpaid employees due to its failure to properly calculate the regular rate of pay, as described above. These shortfalls affected both ongoing paychecks and final wage payments at the end of assignments. Because these wages were never timely paid in full, they violate the timeliness provisions of California's wage statutes.

58.     Second, AMN routinely delayed wage payments owed for completed work during interim pay periods. For example, Plaintiff Smith experienced one or more instances in which wages and/or stipends for completed shifts were not paid until weeks after they were due. Despite repeated attempts to raise the issue, AMN failed to correct the delay or pay penalties for late payments.

59.     Additionally, when travel nurses completed their assignments or were separated from employment, AMN frequently failed to include all earned compensation, including unpaid overtime, meal/rest break premiums, or unreimbursed expenses, in the employee's final paycheck. This resulted in delayed or incomplete final wage payments in violation of Labor Code §§ 201–202.

60.     These delays and omissions were not isolated errors but rather the foreseeable consequence of AMN's uniform compensation policies and failure to implement safeguards that ensure employees are timely and fully compensated for all hours worked. AMN was or should have been aware that its practices routinely resulted in late or incomplete wage payments. Accordingly, these violations were knowing and willful within the meaning of California Labor Code § 203.

61.     As a result of AMN's failures, Plaintiffs and other aggrieved employees were deprived of wages owed during employment and following termination, and are entitled to recover waiting time penalties under Labor Code § 203, as well as other civil penalties and damages authorized by law.

62.     AMN further failed to provide accurate wage statements, violating California Labor Code § 226 by omitting total hours, accurate pay rates, premium compensation owed, and non-discretionary compensation in overtime calculations.

**F. Joint Employer Allegations under the FLSA.**

63.     At all times relevant herein, Kaiser and AMN jointly employed Plaintiffs and similarly situated individuals under the FLSA, 29 U.S.C. § 203(d), as both entities exercised substantial control over Plaintiffs' working conditions, schedules, duties, assignments, and compensation.

64.     Plaintiffs performed their job duties on Kaiser's premises, utilized Kaiser's facilities and equipment, and delivered patient care integral to Kaiser's healthcare operations. Kaiser exercised significant operational control, including setting shift requirements, staffing levels, break scheduling, determining the necessity and scope of Plaintiffs' job duties, and exercising hiring and firing authority.

65.     AMN and Kaiser jointly benefited from the labor performed by Plaintiffs. AMN facilitated recruitment, hiring, payroll processing, and placement, while Kaiser directly supervised, assigned tasks, and dictated conditions of employment on-site. Both entities thus shared control and responsibility for Plaintiffs' employment.

66.     Accordingly, Kaiser and AMN are jointly and severally liable for violations of the FLSA, including but not limited to the failure to pay overtime compensation based upon the proper regular rate of pay, as alleged herein.

1

## CLASS ACTION ALLEGATIONS

2      67.      <u>Class Definitions</u>: Plaintiffs bring this action individually and on behalf

3   of other similarly situated individuals. Pursuant to Federal Rules of Civil Procedure

4   23(b)(3), 23(b)(2), and/or 23(c)(4), Plaintiffs seek certification of the classes and

5   subclasses defined as follows:

6
        <u>The Class</u>: All individuals who, within the applicable statute of
7       limitations, worked for AMN as a travel clinician within the State of
        California.
8
        <u>The Kaiser Subclass</u>: All individuals who, within the applicable statute
9       of limitations, worked for AMN as a travel clinician at a Kaiser
        healthcare facility within the State of California.
10

11      <u>The California Unpaid Training Subclass</u>: All individuals who, within
        the applicable statute of limitations, worked for AMN as a travel
12      clinician and performed mandatory pre-assignment training without
        full compensation.
13

14      <u>The California Expense Reimbursement Subclass</u>: All individuals who,
        within the applicable statute of limitations, performed work for AMN
15      in California and incurred unreimbursed business expenses related to
        their assignment.
16

17      <u>The California Break Violation Subclass</u>: All individuals who, within
        the applicable statute of limitations, worked for AMN in California and
18      were denied lawful meal or rest breaks, or were not paid premium
        compensation for noncompliant or missed breaks.
19

20      <u>The California Regular Rate Subclass</u>: All individuals who, within the
        applicable statute of limitations, worked for AMN in California and
21      received non-discretionary payments that were excluded from their
        regular rate of pay for purposes of calculating overtime and/or break
22      premiums.

23      <u>The California Waiting Time Penalties Subclass</u>: All individuals who,
        within the applicable statute of limitations, at the time of separation
24      from employment with AMN in California, were not timely paid all
        wages due, including unpaid premiums or unreimbursed expenses.
25

26      <u>The California Failure to Timely Pay Wages Subclass</u>: All individuals
        who, within the applicable statute of limitations, worked for AMN in
27      California and whose earned wages were not paid or paid late during
        ongoing employment.
28

14

68.     Excluded from the Classes are the Court and its officers, employees, and relatives; AMN and its subsidiaries, officers, and directors; and governmental entities.

69.     <u>Numerosity</u>: The members of the Classes are so numerous that joinder is impracticable. AMN operates nationwide and has employed thousands of traveling clinicians who were subject to the same challenged compensation practices.

70.     <u>Ascertainability</u>: All members of the Classes are ascertainable by reference to objective criteria, as AMN has access to addresses and other contact information for class members that can be used for notice purposes.

71.     <u>Common Questions of Law and Fact Predominate</u>: There are many questions of law and fact common to Plaintiffs and the Classes, and those questions substantially predominate over any questions that may affect individual members of the Classes. Common questions include:

   a.  Whether Defendants failed to pay employees for mandatory pre-assignment training;

   b.  Whether Defendants failed to reimburse necessary business expenses in violation of Cal. Labor Code § 2802;

   c.  Whether Defendants failed to provide compliant meal and rest breaks or to pay associated premiums;

   d.  Whether Defendants improperly excluded non-discretionary stipends from the regular rate of pay when calculating overtime and break premiums;

   e.  Whether Defendants failed to timely pay wages due during employment and upon separation;

   f.  Whether Defendants' compensation policies violated the FLSA;

g.  Whether Plaintiffs and Class members were harmed by Defendants'
    unlawful compensation practices;

h.  Whether Defendants' conduct was knowing and willful within the
    meaning of California Labor Code § 203 and/or the FLSA;

i.  Whether Defendants acted or failed to act in good faith with respect to
    their wage payment practices.

72.    <u>Typicality</u>: Plaintiffs' claims are typical of those of the proposed Classes they arise from the same conduct, policies, and practices of AMN and are based on the same legal theories. Plaintiffs, like other members of the Classes, were subject to AMN's standard onboarding, expense, break, and compensation policies.

73.    <u>Adequacy of Representation</u>: Plaintiffs will fairly and adequately represent the interests of the Classes. Plaintiffs have no conflicts with other members of the proposed Classes and have retained counsel experienced in complex labor, employment, and class litigation who will vigorously prosecute this action on behalf of all class members.

74.    <u>Superiority of Class Action</u>: A class action is superior to other available methods for the fair and efficient adjudication of this controversy. Class treatment will allow a large number of similarly situated individuals to pursue common claims in a single forum, avoiding the waste and inefficiency of individual actions and promoting judicial economy.

75.    To the extent not all issues can be resolved on a class-wide basis, Plaintiffs seek certification of particular issues under Rule 23(c)(4), and reserve the right to propose additional subclasses under Rule 23(c)(5), including but not limited to subclasses for different wage claims, facilities, or geographic locations.

## COLLECTIVE ACTION ALLEGATIONS

76.    Plaintiffs bring their Eighth Cause of Action, asserting claims under the FLSA arising from Defendants AMN's and Kaiser's overtime violations, as an

"opt-in" collective action pursuant to 29 U.S.C. § 216(b). Plaintiffs bring this claim on behalf of themselves and the following proposed collectives:

> The AMN FLSA Collective: All individuals who, within the applicable statute of limitations, worked for AMN and received non-discretionary payments that were improperly excluded from their regular rate of pay for purposes of calculating overtime compensation.

> The Kaiser FLSA Collective: All individuals who, within the applicable statute of limitations, worked for AMN at a Kaiser healthcare facility and received non-discretionary payments that were improperly excluded from their regular rate of pay for purposes of calculating overtime compensation.

77.     Plaintiffs, individually and on behalf of all others similarly situated, seek collective relief under the FLSA against AMN and Kaiser based on the violations described herein. The exact number and identities of other similarly situated individuals who have yet to opt-in and consent to participate as plaintiffs can be determined from AMN's and Kaiser's employment and payroll records. Potential opt-in plaintiffs may readily be identified and promptly notified of the pendency of this action.

## COUNT I

### Failure to Pay Wages for Mandatory Pre-Assignment Training

### (Cal. Lab. Code §§ 1194, 1197)

*(On behalf of Plaintiffs and the California Unpaid Training Subclass)*

78.     Plaintiffs reallege and incorporate by reference all prior paragraphs.

79.     Under California law, employers must pay employees at least minimum wage for all hours worked. Hours worked include time spent on required job-related training.

80.     AMN required Plaintiffs and members of the California Unpaid Training Subclass to complete mandatory onboarding modules, facility-specific trainings, and exams before beginning their paid assignments.

81.    These trainings were not voluntary and were directly related to employees' job duties.

82.    AMN failed to pay Plaintiffs and subclass members for time spent completing these trainings, violating Cal. Lab. Code 1197 and entitling recovery under Cal. Lab. Code § 1194.

83.    As a result, Plaintiffs and subclass members are entitled to recover unpaid wages, interest, attorneys' fees, and costs.

## COUNT II

### Failure to Reimburse Business Expenses

### (Cal. Lab. Code § 2802)

*(On behalf of Plaintiffs and the California Expense Reimbursement Subclass)*

84.    Plaintiffs reallege and incorporate by reference all prior paragraphs.

85.    California Labor Code § 2802 requires employers to reimburse employees for necessary expenditures incurred in the discharge of their duties.

86.    Plaintiffs and members of the California Expense Reimbursement Subclass incurred necessary business expenses, including travel, lodging, licensing, credentialing, and other costs.

87.    AMN failed to reimburse these expenses, violating Cal. Lab. Code § 2802.

88.    Plaintiffs and subclass members seek reimbursement, plus interest, attorneys' fees, and costs.

## COUNT III

### Meal and Rest Period Violations

### (Cal. Lab. Code §§ 226.7, 512)

*(On behalf of Plaintiffs and the California Break Violation Subclass)*

89.    Plaintiffs reallege and incorporate by reference all prior paragraphs.

90.     California law entitles employees to a 30-minute off-duty meal period when working more than five hours, and a second off-duty meal period when working more than 10 hours. These meal periods are typically unpaid unless the employee is not relieved of all duties, in which case they must be paid. Employees are also entitled to a paid 10-minute rest break for every four hours worked or major fraction thereof. If an employer fails to provide required meal or rest breaks, it must pay the employee one additional hour of pay at the employee's regular rate for each day a violation occurs.

91.     During their assignments, Plaintiffs and members of the California Break Violation Subclass were routinely denied legally required meal and/or rest periods. These violations occurred due to chronic understaffing, unrelieved patient care duties, inadequate scheduling practices, and lack of coverage—especially during shifts exceeding ten hours. These working conditions effectively prevented Plaintiffs from taking uninterrupted and compliant breaks.

92.     AMN failed to take reasonable steps to ensure that Plaintiffs and subclass members were relieved of duty and afforded the opportunity to take uninterrupted breaks. Despite knowledge of scheduling and staffing limitations, AMN failed to implement systems or practices to track or compensate for missed, shortened, or on-duty breaks.

93.     AMN did not compensate them with premium payments for these violations, breaching its obligations under Cal. Lab. Code §§ 226.7 and 512.

94.     Plaintiffs and subclass members seek premium pay, interest, and other appropriate relief.

## COUNT IV

## Failure to Include All Compensation in Regular Rate of Pay

## (Cal. Lab. Code §§ 510, 226.7, 1194)

(*On behalf of Plaintiffs and the California Regular Rate Subclass*)

95.    Plaintiffs reallege and incorporate by reference all prior paragraphs.

96.    California law requires that overtime wages and break premiums be paid based on the employee's regular rate of pay, which must include all non-discretionary compensation.

97.    Defendants provided fixed stipends, per diem payments, and other forms of non-discretionary compensation as part of employees' agreed-upon pay. However, these amounts were unlawfully excluded from employees' regular rate of pay when calculating overtime wages and meal and rest break premiums.

98.    As a result, AMN underpaid overtime and premium wages in violation of Cal. Lab. Code §§ 510, 226.7, and 1194.

99.    Plaintiffs and subclass members seek unpaid wages, interest, attorneys' fees, and costs.

## COUNT V

## Waiting Time Penalties

## (Cal. Lab. Code §§ 201-203)

(*On behalf of Plaintiffs and the California Waiting Time Penalties Subclass*)

100.    Plaintiffs reallege and incorporate by reference all prior paragraphs.

101.    Cal. Lab. Code §§ 201–202 require that employees receive all earned wages at the time of separation.

102.    AMN willfully failed to pay Plaintiffs and members of the California Waiting Time Penalties Subclass all wages earned and owed at the time of separation, including but not limited to unpaid overtime wages, meal and rest break

20

premiums, and business expense reimbursements. These amounts were not included in final paychecks and were not paid within the time required by law.

103.    As a result, Plaintiffs and subclass members are entitled to waiting time penalties under Cal. Lab. Code § 203.

## COUNT VI

## Failure to Timely Pay Wages During Employment

### (Cal. Lab. Code § 204)

(*On behalf of Plaintiffs and the California Failure to Timely Pay Wages Subclass*)

104.    Plaintiffs reallege and incorporate by reference all prior paragraphs.

105.    California Labor Code § 204 requires timely payment of earned wages during employment.

106.    AMN regularly failed to pay Plaintiffs and members of the California Failure to Timely Pay Wages Subclass all earned compensation during the course of employment. These delays were not isolated incidents or clerical errors, but the result of systemic payroll and timekeeping practices that failed to account for all compensable time and components of wages, in violation of Labor Code § 204.

107.    As a result, Plaintiffs and subclass members suffered financial harm and seek all available remedies, including penalties.

## COUNT VII

## Violation of California's Unfair Competition Law

### (Cal. Bus. & Prof. Code §§ 17200 *et seq.*)

(*On behalf of Plaintiffs and the Class and Kaiser Subclass*)

108.    Plaintiffs reallege and incorporate by reference all prior paragraphs.

109.    California's Unfair Competition Law (UCL), Business and Professions Code §§ 17200 *et seq.*, prohibits any unlawful, unfair, or fraudulent business act or practice.

110.   Defendants engaged in unlawful business acts and practices in violation of the UCL, including but not limited to:

      a. Failing to pay minimum wages for mandatory pre-assignment training in violation of Labor Code §§ 1194 and 1197;

      b. Failing to reimburse necessary business expenses in violation of Labor Code § 2802;

      c. Failing to provide compliant meal and rest breaks and failing to pay required premiums in violation of Labor Code §§ 226.7 and 512;

      d. Failing to include all non-discretionary compensation in the regular rate of pay when calculating overtime and break premiums, in violation of Labor Code §§ 510, 226.7, and 1194;

      e. Failing to timely pay all wages owed at the time of separation in violation of Labor Code §§ 201–203;

      f. Failing to timely pay earned wages during employment in violation of Labor Code § 204; and

      g. Failing to pay overtime compensation at the proper rate under the FLSA, 29 U.S.C. § 207.

111.   Defendants' conduct is also "unfair" within the meaning of the UCL because it frustrates California's public policy favoring full and timely payment of wages, reimbursement of employee-incurred expenses, and transparency in compensation.

112.   As a direct and proximate result of these unlawful and unfair practices, Plaintiffs and Class members have suffered economic injury in the form of unpaid wages, unreimbursed expenses, and other financial losses.

113.   Plaintiffs seek restitution of all wages and other compensation unlawfully withheld, an injunction prohibiting further violations, interest, and attorneys' fees and costs as permitted under California law.

## COUNT VIII

### Failure to Pay Overtime Wages Under the FLSA

### (29 U.S.C. § 207)

(*On behalf of Plaintiffs and the AMN FLSA Collective and Kaiser FLSA Collective*)

114.    Plaintiffs reallege and incorporate by reference all prior paragraphs.

115.    At all times relevant to this action, Plaintiffs and all similarly situated individuals in the AMN FLSA Collective were employed by AMN.

116.    In addition, Plaintiffs and members of the Kaiser FLSA Collective worked at Kaiser healthcare facilities while employed by AMN. Plaintiffs allege that Kaiser jointly employed these individuals under the FLSA, 29 U.S.C. § 203(d), by exercising control over their schedules, job duties, work conditions, and supervision on site.

117.    The FLSA requires covered employers to pay non-exempt employees one and one-half times their regular rate of pay for all hours worked in excess of 40 in a workweek. 29 U.S.C. § 207(a).

118.    The "regular rate" of pay includes all remuneration for employment (except for statutory exclusions) and is determined by dividing total compensation by total hours worked in a given workweek. *See* 29 C.F.R. § 778.109.

119.    Defendants provided fixed stipends, per diem payments, and other forms of non-discretionary compensation as part of employees' agreed-upon pay. However, these amounts were unlawfully excluded from employees' regular rate of pay when calculating overtime wages.

120.    As a result, Plaintiffs and members of the AMN and Kaiser FLSA Collectives were underpaid for overtime hours worked, in violation of the FLSA.

23

121.   Defendants' compensation practices reflected a uniform, company-wide policy applied to all travel clinicians, including those placed at Kaiser facilities, resulting in the systematic underpayment of overtime wages.

122.   Defendants do not qualify for any FLSA exemption that would excuse their failure to pay proper overtime wages.

123.   Defendants' violations of the FLSA were willful. They acted with knowledge or reckless disregard of their legal obligations under the statute and failed to implement measures to ensure compliance.

124.   Plaintiffs and members of the AMN and Kaiser FLSA Collectives are entitled to recover all unpaid overtime compensation for the three years preceding their opt-in to this action, plus any additional period justified by equitable tolling due to Defendants' failure to provide accurate wage statements or disclose wage computation methods.

125.   Defendants failed to act in good faith or with reasonable grounds for believing they complied with the FLSA, entitling Plaintiffs and the FLSA Collectives are entitled to liquidated damages in an amount equal to their unpaid overtime wages under 29 U.S.C. § 216(b). Alternatively, should the Court find Defendants acted in good faith, Plaintiffs seek prejudgment interest on all unpaid wages at the applicable legal rate.

## **REQUEST FOR RELIEF**

Plaintiffs, individually and on behalf of all others similarly situated, respectfully request that the Court enter judgment in their favor and against Defendants as follows:

A.      Certify the proposed Classes and Subclasses under Federal Rule of Civil Procedure 23 and designate Plaintiffs as Class Representatives and their counsel as Class Counsel;

1    B.    Certify the FLSA Collective under 29 U.S.C. § 216(b) and authorize
2    notice to all similarly situated individuals;

3    C.    Award compensatory damages, including: (a) unpaid minimum and
4    overtime wages; (b) unpaid premium compensation for missed or noncompliant
5    meal and rest periods; (c) unreimbursed business expenses; (d) waiting time
6    penalties for untimely payment of wages upon separation; (e) penalties for delayed
7    wage payments during employment;

8    D.    Award restitution and disgorgement of unlawfully withheld
9    compensation under California's Unfair Competition Law (Cal. Bus. & Prof. Code
10    §§ 17200 *et seq*.);

11    E.    Award liquidated damages under the FLSA for willful violations of 29
12    U.S.C. § 207;

13    F.    Award interest on all unpaid wages and expenses, including both pre-
14    judgment and post-judgment interest;

15    G.    Award reasonable attorneys' fees, litigation expenses, and costs
16    pursuant to applicable state and federal laws, including Cal. Lab. Code §§ 218.5,
17    1194, 2802, and 2699, and 29 U.S.C. § 216(b);

18    H.    Grant declaratory relief establishing that Defendants' policies and
19    practices violated the law;

20    I.    Grant injunctive relief requiring Defendants to bring their policies and
21    practices into compliance with California law and the FLSA;

22    J.    Award any other and further relief as the Court deems just and proper.

23    ## DEMAND FOR JURY TRIAL

24    Plaintiffs demand a jury trial on all claims so triable.

25

26

27

28

1   Dated: August 1, 2025                Respectfully submitted:

2

3                                        */s/ Jason S. Hartley*
                                         Jason S. Hartley (SBN# 192514)
4                                        **HARTLEY LLP**
                                         101 W. Broadway, Suite 820
5                                        San Diego, California 92101
                                         Telephone: (619) 400-5822
6                                        hartley@hartleyllp.com
7

8                                        George A. Hanson*
                                         J. Austin Moore*
9                                        Alexander T. Ricke*
10                                       **STUEVE SIEGEL HANSON LLP**
                                         460 Nichols Road, Suite 200
11                                       Kansas City, Missouri 64112
                                         Telephone: (816) 714-7100
12                                       Facsimile: (816) 714-7101
13                                       hanson@stuevesiegel.com
14                                       moore@stuevesiegel.com
                                         ricke@stuevesiegel.com
15

16                                       *Pro Hac Vice Forthcoming*

17

18

19

20

21

22

23

24

25

26

27

28